UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:17-CR-55-REW-HAI-2 |
| v. | ) | |
| | ) | OPINION & ORDER |
| JAMES RUSSELL PETERS, JR., | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant James Russell Peters, Jr. moves, pursuant to Rule 12(b)(3) and the Fifth Amendment, to dismiss the pending First and Second Superseding Indictments. DE 142 (Motion); DE 142-1 (Memorandum in Support). The gist of Defendant's argument is that the President unconstitutionally installed Hon. Matthew G. Whitaker, then-AG Chief of Staff, to serve as Acting Attorney General. Per Peters, dismissal of this prosecution "is necessary to ameliorate the . . . unlawful installation[.]" DE 142 at 1. The Government responded. DE 149 (Response). After considering the parties' contentions regarding the validity of the assignment and the proper remedy, if any, the Court, under the applicable standards, finds dismissal unwarranted and denies the motion.

Essentially, Peters claims that the President did not, indeed could not, lawfully name Whitaker as Acting AG. He contends the assignment violates both statutory succession and constitutional appointment provisions. The motion takes the long (in the Court's view, fanciful) leap of basically contending that if Whitaker, as nominal

1

department head, improperly is the ad interim AG, every current DOJ prosecution must be dismissed. For a host of reasons, the Court disagrees.[1]

The following chronology provides the relevant background. On April 26, 2018, a federal grand jury indicted Defendant, and others, on charges of conspiring to distribute 50+ grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 846. DE 31 (Superseding Indictment – Count 1).[2] On November 7, 2018, then-AG Jefferson B. Sessions III resigned, and the President designated Mr. Whitaker as his temporary, "Acting" replacement. *See Designating an Acting Attorney General*, 42 Op. O.L.C. ___, at 1 (Nov. 14, 2018); DE 142-2 (Resignation Letter). On November 8, 2018, the grand jury returned a superseding indictment charging Peters, solely this time, with textually like meth distribution conduct. DE 137 (Second Superseding Indictment – Count 1). The United States Attorney for the Eastern District of Kentucky signed both indictments.

---

[1] The Court has significant standing concerns, which neither side really addresses. The standing principles are plain enough: Defendant needed to show "that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action . . . ; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009) (citation omitted). Here, Peters complains about Whitaker and the Appointments Clause, but he does not tie Whitaker to any decision adversely affecting him. Further, Peters does not show how disqualifying Whitaker would lead to any relief for him.

Admittedly, Courts have taken perhaps the broadest view of standing in the context of Appointments Clause arguments. *See infra* note 13; *Landry v. F.D.I.C.*, 204 F.3d 1125, 1131 (D.C. Cir. 2000) ("[J]udicial review of an Appointments Clause claim will proceed even where any possible injury is radically attenuated."). The Court proceeds to look at the merits but has lingering doubt over the propriety of Peters here making the claim. *See Jefferson v. Harris*, 285 F. Supp. 3d 173, 187 (D.D.C. 2018) ("Challenges under the Appointments Clause may require a lesser degree of causation between the alleged harm and the constitutional violation, but it does not follow that any asserted injury is cognizable in such contexts." (emphasis in original)).

[2] Defendant entirely fails to explain why the challenged designation impacts the validity of the still-pending DE 31 Superseding Indictment from April 2018. The Government notes the issue but does not press the point. *See* DE 149 at 18.

Multiple predicate steps undergird Defendant's theory. He claims that: (1) the procedures Congress authorized for temporarily replacing "PAS"[3] officers in the Federal Vacancies Reform Act (FVRA)[4] are "inapplicable where some other statute 'designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity'";[5] (2) the Attorney General Succession Act (AGSA)[6] designates such a replacement officer—namely, the Deputy AG; (3) the AGSA thus provides the exclusive statutory procedure for filling an AG vacancy; (4) the President's designation of Mr. Whitaker (rather than the Deputy AG) as Acting AG violates the AGSA; (5) the temporary appointment, sans Senate vetting, did not comply with the Appointments Clause[7]; (6) the AG is the statutory supervisor and director of all federal prosecutions, including the pending matter; (7) the prosecution is, thus, constitutionally defective as headed by an unqualified AG; and (8) dismissal is the proper remedy. *See generally* DE 142-1. The Court, for the following reasons, rejects the first, fifth, seventh, and eighth predicates and denies the motion.

---

[3] "PAS" offices require "Presidential appointment and Senate confirmation[.]" *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 934 (2017) (hereinafter "*SW General*").

[4] 5 U.S.C. §§ 3345–§ 3349d.

[5] DE 142-1 at 5 (quoting 5 U.S.C. § 3347(a)(1)(B)). Defendant also contends, alternatively, that if the FVRA is an available AG vacancy fulfillment mechanism, the statute is unconstitutional as applied. *See id.* at 15.

[6] 28 U.S.C. § 508.

[7] The Appointments Clause, in relevant part, empowers the President to:
> [N]ominate, and by and with the Advice and Consent of the Senate, [ ] appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law[.]

U.S. Const. art. II, § 2, cl. 2; *see also id.* ("[B]ut the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.").

*FVRA Applicability & Constitutionality*

Contrary to Defendant's position, § 3347 does not render FVRA mechanics inapplicable to a given vacancy simply because a separate statute authorizes an alternative procedure. Rather, the text of § 3347 makes clear that Congress intended the FVRA generally to be exclusive, but to be alternative where a specific interim appointment statute coexists. 5 U.S.C. § 3347(a) (The FVRA mechanics "are the exclusive means for temporarily authorizing an acting official . . . **unless** [ ] a statutory provision expressly" provides alternative procedures.); *see Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 555–56 (9th Cir. 2016); *English v. Trump*, 279 F. Supp. 3d 307, 323–24 (D.D.C. 2018), *appeal dismissed upon appellant's motion*, No. 18-5007, 2018 WL 3526296 (D.C. Cir. July 13, 2018); *United States v. Valencia*, No. 517CR882DAE12, 2018 WL 6182755, at *4 (W.D. Tex. Nov. 27, 2018). Per *Hooks*, the FVRA and agency-specific statute interplay renders **neither** exclusive. 816 F.3d at 556. Indeed, the same agency-specific statute that Defendant cites as rendering the FVRA inapplicable to AG vacancies expressly contemplates application of § 3345. *See* DE 142-1 at 13; *Valencia*, 2018 WL 6182755, at *4 ("The plain text of § 508 refers to § 3345[.]"). The AGSA provides, "for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant to the Attorney General." 28 U.S.C. § 508(a). If § 508, through § 3347, rendered § 3345 inapplicable, Congress's inclusion of this language would be mere surplusage (and odd). "Judges should hesitate [ ] to treat statutory terms" as "words of no consequence." *See Ratzlaf v. United States*, 114 S. Ct. 655, 659 (1994). Further, the AGSA language is permissive rather than mandatory. 28 U.S.C. § 508 ("[T]he Deputy Attorney General **may** exercise all the duties of that office[.]" (emphasis

added)). In short, the statutory text indicates the AGSA and FVRA can, and indeed were intended to, coexist. *Valencia*, 2018 WL 6182755, at *4 ("§ 3345 is not in conflict with [ ] § 508."). The FVRA is exclusive "unless," there is a specific statutory alternative. 5 U.S.C. § 3347(a). The existence of the alternative does not render the FVRA unavailable as a non-exclusive mechanism for ad interim designations.

If Congress had sought to exclude the Attorney General from the FVRA's purview (wholly or in part), it could have done so explicitly. The legislature did just that with FERC commissioners, Surface Transportation Board members, and others. *See* 5 U.S.C. § 3349c. Prior statutory versions provided another obvious path in the 1994 version of the Vacancies Act. *Id.* at § 3347 (1994) (exempting "the office of Attorney General" from a then-existing first-assistant selection alternative).[8] "The fact that [Congress] did not adopt [either] readily available and apparent alternative strongly supports" the conclusion that the FVRA applies to the AG. *Knight v. Commissioner*, 128 S. Ct. 782, 787 (2008). The same circumstance belies Peters's claim that Congress intended an oblique FVRA exclusion route. *Cf. Andrus v. Glover Construction Co.*, 100 S. Ct. 1905, 1910 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."). The Court finds nothing in the text to suggest

---

[8] Because the statutory text is clear, the Court need not resort to legislative history. Nonetheless, the Court notes that the Senate Committee Report is consistent with the textual interpretation. *See* S. Rep. No. 105-250, at 17 (1998) ("[W]ith respect to the specific positions in which temporary officers may serve under the specific statutes this bill retains, the Vacancies Act would continue to provide an alternative procedure for temporarily occupying the office.").

5

Congress sought to except the AG from the FVRA's coverage via § 3347.[9] The text, indeed, is contra. Section 3347 does not say that an alternative statute trumps the FVRA, and 28 U.S.C. § 508, while helpfully cross-referencing the FVRA, nowhere says it supersedes that statute. Section 508, though never mentioning an interim designation, logically melds with the structure of the FVRA, providing an automatic continuation of AG duties subject to operation of the FVRA. *Cf. Valencia*, 2018 WL 6182755, at *4 ("[T]he plain text of § 508 does not speak to presidential [designations] at all, rather, it speaks to the self-executing order of succession in place within the [DOJ].").

Alternatively, Defendant briefly argues that utilizing the FVRA mechanisms to fill an AG vacancy "would surely raise a serious constitutional question." DE 142-1 at 15. The Court finds no likely constitutional infirmity here. The President's ad interim appointment of Mr. Whitaker was not subject to the constitutional "Advice and Consent" requirement. *See* U.S. Const. art. II, § 2, cl. 2. The Supreme Court has deemed abridged designations, like Mr. Whitaker's, "inferior" non-PAS appointments. *See, e.g.*, *United States v. Eaton*, 18 S. Ct. 374, 379 (1898) ("[A] subordinate officer [ ] charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, [ ] is not thereby transformed into the superior and permanent official.").[10] Thus, Congress could, consistent with the Appointments Clause, and did, via

---

[9] The Court's finding regarding the FVRA & AGSA's availability as alternative options aligns with existing precedent regarding the interplay between the FVRA and other office-specific mechanisms. *See Hooks*, 816 F.3d at 555–56 (NLRB General Counsel); *English*, 279 F. Supp. 3d at 323–34 (Director of the Bureau of Consumer Financial Protection).

[10] The Court rejects Defendant's efforts to distinguish *Eaton* by importing an exigent circumstances requirement. *See* DE 142-1 at 11. None of the Supreme Court's subsequent *Eaton* treatment supports the proposed predicate. *See Edmond v. United States*, 117 S. Ct. 1573, 1580 (1997); *Morrison v. Olson*, 108 S. Ct. 2597, 2609 (1988). *Eaton*'s crux is

the FVRA, vest authority to select a temporary Acting AG "in the President alone[.]" *See* U.S. Const. art. II, § 2, cl. 2. This approach is hardly novel in the Country's history. *See Designating an Acting Attorney General*, 42 Op. O.L.C. ___, at 10 ("Since 1792, Congress has repeatedly legislated on the assumption that temporary service as a principal officer does not require Senate confirmation."); *see also id.* ("As for the Executive Branch's practice, our non-exhaustive survey has identified over 160 occasions between 1809 and 1860 on which non-Senate-confirmed persons served temporarily as an acting or ad interim principal officer in the Cabinet.").

The key here is that the "Acting" tag—with its accompanying "limited" and "temporary" freight—carries real weight for Appointments Clause purposes. As long as the role is "limited" in time and subject to "special and temporary conditions," an "Acting" officer, despite performing a principal officer's duties, is not a PAS officer. *Eaton*, 18 S. Ct. at 379.[11] Schematic restrictions squarely place FVRA appointments within *Eaton*'s "limited" and "temporary" rubric. For instance, FVRA appointments—

---

temporal restrictions applied to PAS officer replacements, not the circumstances leading to the vacancy. *See Free Enterprise Fund v. Public Company Accounting Oversight Board*, 537 F.3d 667, 708 n.17 (D.C. Cir. 2008) ("The temporary nature of the office is the same reason that *acting* heads of departments are permitted to exercise authority without Senate confirmation." (Kavanaugh, J., dissenting) (emphasis in original)), *aff'd in part and rev'd in part*, 130 S. Ct. 3138 (2010)

[11] Indeed, and as an academic observation, the Supreme Court's delineation of constitutional "Officer" characteristics suggests that an "Acting" official could be considered a "lesser functionar[y]" employee for which "the Appointments Clause cares not a whit about who named them." *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (internal quotation marks omitted). The *Lucia* Court explained that "officers and [mere] employees" are distinguished via dual inquiries regarding "ideas of tenure and duration" and "the extent of power an individual wields[.]" *Id.* A constitutional officer: (A) performs duties that are "continuing and permanent"—as opposed to "occasional or temporary"—and (B) "exercis[es] significant authority pursuant to the laws of the United States[.]" *Buckley v. Valeo*, 96 S. Ct. 612, 685 (1976); *United States v. Germaine*, 99 U.S. 508, 511 (1878).

textually classified as placements to perform functions and duties "temporarily and in an acting capacity"—are subject to sharp temporal (§ 3346) and subsequent nomination limitations (§ 3345(b)(1)). Further, these restrictions have teeth. The FVRA effectuates its strictures by rendering any "action taken by any person who is not acting" within the statutory framework *void ab initio* (with several exceptions not relevant here). 5 U.S.C. § 3348(d); *SW General*, 137 S. Ct. at 938 n.2 ("[T]he general rule [is] that actions taken in violation of the FVRA are *void ab initio*."). FVRA "Acting" appointments are properly construed as inferior-officer placements. When, as here, Congress determines to vest authority for such transitional appointments in the President alone, the Appointments Clause does not invalidate the structure.[12]

---

[12] Defendant's contentions regarding Justice Thomas's concurrence in *SW General* do not require a contrary conclusion. DE 142-1 at 15–16. Concurrences are not, when accompanying a majority opinion, binding precedent. *See Alexander v. Sandoval*, 121 S. Ct. 1511, 1519 (2001) (noting that a majority "holding is not made coextensive with the concurrence because the[ ] opinion does not expressly preclude . . . the concurrence's approach."); *Rice v. Great Seneca Fin. Corp.*, No. 2:04-CV-0951, 2010 WL 2541626, at *5 (S.D. Ohio June 18, 2010), *objections overruled*, No. 204CV0951, 2010 WL 3910308 (Oct. 5, 2010) ("Under these circumstances, 'concurring opinions have no legal effect, and thus, are in no way binding on any court.'" (citation omitted)). None of the other eight participating Justices (including five in the majority) joined Justice Thomas's opinion.

Further, the concurrence's most relevant portion (for current purposes) is based on circumstances distinguishable from Mr. Whitaker's designation. Specifically, the fact that the NLRB General Counsel "served for more than three years in an office limited by statute to a 4–year term" underlay Justice Thomas's conclusion that the appointee's temporary and "acting" status did "not change the analysis." *SW General*, 137 S. Ct. at 946 n.1 (Thomas J., concurring). That such a lengthy "acting" role troubled Justice Thomas is hardly surprising. In filling PAS officer vacancies, the validity of ad interim appointments depends, in significant part, on their syncopated nature. *See Eaton*, 18 S. Ct. at 379; *Free Enterprise Fund*, 537 F.3d at 708 n.17 ("The[ir] temporary nature . . . is the same reason that *acting* heads of departments are permitted to exercise authority[.]" (Kavanaugh, J., dissenting) (emphasis in original) (citing *Id.*). The length of the *SW General* appointment also distanced the placement from the practical necessity and public interest rationales that underpin the historical gap-filling practice. *See, e.g.*, *Provision for Widows of Consuls Who Die in Office*, 2 Op. Att'y Gen. 521, 524 (May 31, 1832) ("The

Because the FVRA, by its terms, is applicable to AG vacancies and such stop-gap measures are constitutional, the rest of Defendant's argument crumbles. The President complied with FVRA procedures in appointing Mr. Whitaker. Defendant does not argue otherwise.

---

public interest requires that the duties of the office should be discharged by someone[.]"). Mr. Whitaker, on the other hand, has served as Acting AG for less than a month. Nothing in the current record suggests that his tenure might stretch to render the acting and temporary labels inapt. *See Valencia*, 2018 WL 6182755, at *7 ("[A]t this point, . . . the [designation] of Whitaker as Acting Attorney General falls within the 'special and temporary' exception to the definition of principal officer[.]").

As Justice Thomas noted, Appointments Clause questions concern one of the "significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 117 S. Ct. 1573, 1579 (1997). The Framers recognized the need for such bulwarks and accounted for them. However, they also foresaw that the Constitution's terms "might require a regular course of practice to liquidate & settle the[ir] meaning[.]" *N.L.R.B. v. Noel Canning*, 134 S. Ct. 2550, 2560 (2014) (quoting Letter to Spencer Roane (Sept. 2, 1819), in 8 Writings of James Madison 450 (G. Hunt ed. 1908)). Supreme Court precedent has "continually confirmed [this] view." *Id.* Accordingly, the Supreme Court's Appointments Clause interpretations place "significant weight upon historical practice." *Id.* at 2559. As the *SW General* majority recognized, "Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant" PAS officer position, absent senate approval, "[s]ince President Washington's first term[.]"137 S. Ct. at 935. The current FVRA is merely the 21st century iteration of a practice that Congress has sanctioned—and the federal courts have upheld, *see, e.g.*, *Eaton*, 18 S. Ct. at 379—in the 18th, 19th, and 20th. *See Designating an Acting Attorney General*, 42 Op. O.L.C. ___, at 10–12 (describing the FVRA antecedents); *see also* DE 142-1 (Defendant does not dispute "the historical accuracy of [the] DOJ's recitation."). These venerable roots carry "great weight in a proper interpretation of the" Appointments Clause. *Noel Canning*, 134 S. Ct. at 2564 (internal quotation marks omitted).

Here, Defendant provides (and the Court sees) no compelling basis for upsetting "the compromises and working arrangements that the elected branches of Government themselves have reached." *Id.* at 2560. The Court has no "serious doubt" regarding the FVRA's constitutionality as applied to the at-issue appointment and, thus, perceives no reason to further analyze Defendant's constitutional avoidance contentions. *See* DE 142-1 at 15−16 (recognizing, as a predicate for applying the avoidance interpretive principle, that Peters needed to show that "the interpretation offered by the [DOJ] would raise 'serious' constitutional questions or doubts.").

*Propriety of Dismissal as a Remedy*

Even if the Court is wrong, as a statutory or constitutional matter, on the interim designation merits, Peters makes an unconvincing remedial case. The AG, prior or current, has not acted directly with respect to this prosecution. Instead, a qualified United States Attorney prosecutes the case in a federal court having jurisdiction, under a charging document from a valid federal grand jury. Defendant's argument, if successful, would yield no relief.

Regarding Appointments Clause challenges, the Supreme Court indicates that a proper remedy includes "a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." *Ryder v. United States*, 115 S. Ct. 2031, 2035 (1995).[13] Thin guidance, to be sure. The *Ryder* formulation leads the Court to the question analyzed below: Would dismissal be appropriate relief in the instant circumstances? The Court answers that question in the negative.

The Supreme Court's Appointments Clause jurisprudence, though somewhat instructive, provides no binding answer to the dismissal propriety question. The *Ryder*

---

[13] In the absence of *Ryder*, Defendant's standing to mount the current constitutional challenge would, in the Court's view, be in earnest doubt. As another District explained:
> Determining whether the [appointment] at issue in this case is unconstitutional would not serve to redress Defendant's alleged injuries, because such a ruling would not require the dismissal of the Superseding Indictment, nor would it preclude the duly appointed Assistant United States Attorneys from taking the case to trial.

*United States v. Tafoya*, 541 F. Supp. 2d 1181, 1184 (D.N.M. 2008), *aff'd*, 557 F.3d 1121 (10th Cir. 2009). However, the Government does not challenge Peters's standing and *Ryder*, though distinguishable, establishes at least a possibility that Defendant is "entitled to a decision on the merits of the question[.]" 115 S. Ct. at 2035. *Ryder* involved questions over judicial officers, and their qualifications (or not) directly impacted the complainant. *SW General* involved questions over the officer with final decisional power over the initiated complaint. No such direct AG involvement exists in the Peters prosecution.

Court remanded a court martial conviction for a fresh initial appeal hearing after finding two appointments to the Coast Guard Court of Military Review—judges that sat on the petitioner's appellate panel—unconstitutional. 115 S. Ct. at 2034, 2038. The *Buckley* Court revoked, following a 30-day stay of judgment, the FEC's authority to exercise its statutorily granted duties and powers based on its then-existing improper composition. 96 S. Ct. at 693–94.[14] Notably, the *Buckley* Court also held that the FEC members' non-compliant appointments did not retroactively "affect the validity of the Commission's administrative actions and determinations[.]" *Id.* Both cases are distinguishable and, more importantly, neither supports dismissal as a proper remedy here.

Here, the grand jury returned the at-issue indictments prior to Defendant's motion (and this ruling). *Buckley*'s non-retroactivity holding thus facially counsels against dismissal. That said, *Ryder* appears to limit *Buckley* and other decisions' implicit application of a "form of the *de facto* officer doctrine"—and the resulting non-retroactivity effect—to their facts. *Ryder*, 115 S. Ct. at 2036.

On the other hand, and contrary to Peters's contentions, *Ryder* does not support dismissal here. Critically, *Ryder* is, by its explicit terms, a ruling limited to an Appointments Clause violation regarding an "officer who adjudicates [the challenging

---

[14] The Court notes that Defendant's reliance, as supporting the dismissal request, on *SW General* is entirely misplaced. *See* DE 142-1 at 7–9. The *SW General* decision is, at bottom, a statutory interpretation case. *See* 137 S. Ct. at 935 ("The question presented is whether [the FVRA § 3345(b)(1)] limitation applies only to first assistants who have automatically assumed acting duties[.]"). The Court explicitly declined to address the propriety of the remedy the D.C. Circuit granted SW General because the NLRB did not seek certiorari on that question. *Id.* at 938 n.2. Further, the statute the Supreme Court interpreted (and the D.C. Circuit applied) is the same scheme that Defendant vigorously protests applying here: the FVRA. *See id.* (describing the circuit court's application of 5 U.S.C. § 3348(e)). Neither the Supreme Court's interpretation or the D.C. Circuit's application of the FVRA supports the relief Defendant seeks. Peters pursues no FVRA remedy.

party's] case[.]" 115 S. Ct. at 2035; *see id.* ("Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable **judicial** appointments." (emphasis added)). In this case, Mr. Whitaker is, as opposed to an adjudicator, at most an entirely indirect supervisor of one litigant. Improperly appointed officials directly adjudicated Ryder's appeal and exercised "*de novo* review over the factual findings and legal conclusions of the court-martial." *Ryder*, 115 S. Ct. at 2037–38. Here, the nexus between the Acting AG and Peters's case is, on this record, purely a creature of statute. *See* DE 142-1 at 8. Peters claims no actual direct or indirect Whitaker involvement in commencement or continuation of this prosecution. The Acting AG's possible constructive involvement with this case is miles, literally and figuratively, from the *Ryder* judges' in-court adjudicative role.[15]

Pre-existing (and unchanged) DOJ delegations further restrict any hypothetical (or statutorily authorized) avenue for Mr. Whitaker to influence this prosecution. DOJ regulations authorize the Senate-confirmed Deputy AG to exercise all delegable AG powers. 28 C.F.R. § 0.15(a). Former-AG Sessions, as the DOJ's organizational structure indicates, delegated supervisory authority over all United States Attorneys (including the indictments' signatory, Hon. Robert M. Duncan, Jr., DE 31 & 137) to the Deputy AG. *See* Department of Justice Organizational Chart, *available at* https://www.justice.gov/agencies/chart (last visited Nov. 29, 2018).[16] Additionally,

---

[15] To be clear, *Ryder* did not foreclose harmless error analysis for alleged Appointments Clause violations. 115 S. Ct. at 2037. Rather, the Court declined to address whether the lack of prejudice springing from "defects in the composition of petitioner's appellate panel" could support affirmance. *Id.*

[16] Defendant contends the Senate-confirmed Deputy AG must, under the AGSA, constructively oversee this prosecution. *See* DE 142-1 at 9, 12. However, the existing delegation of United States Attorney oversight means that Deputy AG Rod Rosenstein

12

Department regulations assign supervision and conduct of Peters's specific charged crime to the Assistant AG, Criminal Division. 28 C.F.R. § 0.55(c) (assigning authority over "criminal and civil litigation under the Controlled Substances Act"). The propriety and status of these delegations, and the validity of the delegatees' appointments, stand undisputed. These organizational distributions and oversight disseminations demonstrate the distance between Mr. Whitaker and the Peters indictments.

Further, the United States prosecutes a case in this District before a Court with jurisdiction. The duly-appointed United States Attorney has statutory power to pursue the case. *See* 28 U.S.C. § 547(1) (stating that "each United States attorney, within his district, shall (1) prosecute for all offenses against the United States[.]"). This Court has jurisdiction. *See* 18 U.S.C. § 3231. Per Rule 6(a), the Court summoned a grand jury, which returned the indictments. "An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 76 S. Ct. 406, 409 (1956) (footnote omitted).

A properly constituted grand jury returned two facially valid indictments[17] against Peters. Grand jurors "act[ ] independently of either prosecuting attorney or judge[.]"

---

already has, in this prosecution, a more direct supervisory role than Peters seeks. *See also Valencia*, 2018 WL 6182755, at *5 ("[E]ven if . . . Whitaker's appointment was found to violate § 508, the" Deputy AG, "under that section[,] . . . would have the requisite authority to oversee this prosecution[.]").

[17] Under the Federal Rules, a properly constituted (16-23 member) grand jury with twelve concurring jurors may indict by returning the indictment to a magistrate judge. Fed. R. Crim. P. 6(f). As to content, the Rules require only that an indictment: (1) "be a plain, concise, and definite written statement of the essential facts constituting the offense charged"; (2) "be signed by an attorney for the government"; (3) for each count, "give the official or customary citation of the . . . provision of law that the defendant" allegedly violated; (4) and include the grand jury foreperson's signature. *Id.* at 7(c)(1) & 6(c). Defendant does not challenge, and the Court sees no reason to doubt, compliance with these requirements. *See United States v. R. Enterprises, Inc.*, 111 S. Ct. 722, 728 (1991)

*Stirone v. United States*, 80 S. Ct. 270, 273 (1960). The Government's role in a grand jury proceeding provides no basis for indictment dismissal, "absent a finding that [Defendant was] prejudiced[.]" *Bank of Nova Scotia v. United States*, 108 S. Ct. 2369, 2378 (1988). In the current context, this means Peters needed to establish "grave doubt that the" alleged Appointments Clause violation did not impact the grand jury's "decision to indict[.]" *Id.* To create the requisite doubt, and prove more than a "harmless-error[,]" it was imperative for Defendant to show some consequential, prejudicial link between the disputed placement and the grand jury's probable cause determination. *Jefferson v. Morgan*, 962 F.2d 1185, 1191 (6th Cir. 1992) (citing *Bank of Nova Scotia*, 108 S. Ct. at 2373). With Peters showing utterly no influence by or role of Whitaker in the prosecution, the grand jury stands unimpeachable. *United States v. Williams*, 112 S. Ct. 1735, 1742 (1992) ("Rooted in long centuries of Anglo–American history, . . . the grand jury is mentioned in the Bill of Rights, . . . [i]t has not been textually assigned . . . to any of the branches[, and] . . . [i]t is a constitutional fixture in its own right." (internal alterations, citations, and quotation marks omitted)).

Peters provides no remedial case to support dismissal. Presumably, and based on his attack against both indictments, he views the appointment issue as showing a vulnerability pervading the entire DOJ apparatus. If Whitaker is not a proper Acting AG, Peters seeks to invalidate every ongoing prosecution as proceeding under faulty leadership. Whatever may be the analysis for affirmative conduct by an Acting AG, the ship of state continues on, despite personnel changes. Peters offers nothing to suggest that locally originated prosecutions end if an AG faces qualification challenges.

---

("[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority.").

In sum, Defendant's motion fails on multiple cascading bases. The FVRA is a constitutional and textually available option for AG vacancy fulfillment. Even if the Court did not so find, Peters identifies (and the Court sees) no pertinent harm traceable to Mr. Whitaker's designation. Delegations to two duly appointed officers sever any constructive linkage, and the indictments came from a properly comprised, independent federal grand jury.

For all these reasons, and under the applicable standards, the Court **DENIES** DE 142.

This the 3rd day of December, 2018.

Signed By:
Robert E. Wier
United States District Judge